UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

| | |
|---|---|
| MANTUA TOWNSHIP BOARD OF EDUCATION,<br><br>                Plaintiff,<br><br>       v.<br><br>E.K., on behalf of W.W.,<br><br>                Defendant. | Civil Action<br>1:22-CV-07496-KMW-MJS<br><br>**MEMORANDUM OPINION** |

**William C. Morlok, Esq.**
PARKER MCCAY P.A.
9000 Midlantic Drive, Suite 300
Mount Laurel, NJ 08054

*Counsel for Plaintiff*
*Mantua Township Board of Education*

**Jamie M. Epstein, Esq.**
17 Fleetwood Drive
Hamilton, NJ 08690

*Counsel for Defendant E.K., on behalf of WW*

**WILLIAMS, District Judge:**

I. **INTRODUCTION**

Plaintiff Mantua Township Board of Education (the "Board") initiated this action against Defendant E.K., on behalf of her minor son, W.W. ("Defendant"), under the Individuals with Disabilities Education Act (the "IDEA"), 20 U.S.C. §§ 1400, *et seq.* More specifically, the Board appeals the September 29, 2022 decision of New Jersey Administrative Law Judge Carl V. Buck (the "ALJ"), which ordered the Board to pay the outstanding balances of certain invoices related to W.W.'s independent educational evaluations. In her Answer and Counterclaims, Defendant seeks to appeal a separate decision issued by the ALJ this same day, which denied her demands for relief upon a finding that the Board had complied with its obligations under the IDEA.

1

Presently before the Court is the Board's Motion to Dismiss Defendant's Counterclaims pursuant to Federal Rule of Civil Procedure 12(b)(6). Specifically, the Board contends that Defendant's counterclaims are untimely because they were filed beyond the IDEA's ninety-day statute of limitations period for seeking review of a final agency decision. Defendant has opposed the Board's Motion.

For the reasons set forth below, the Court grants the Board's Motion and dismisses Defendant's counterclaims as untimely.

## II. STATUTORY FRAMEWORK

The IDEA is a "comprehensive scheme of federal legislation designed to meet the special educational needs of children with disabilities." *M.A. ex rel E.S. v. State-Operated Sch. Dist.*, 344 F.3d 335, 338 (3d Cir. 2003). In exchange for federal funding, states pledge to comply with a number of substantive and procedural conditions in providing educational services to qualifying disabled students. *See T.R. v. Sch. Dist. of Philadelphia*, 4 F.4th 179, 182–83 (3d Cir. 2021). State recipients apportion federal funds to local educational agencies, like the Board here, who are in turn responsible for providing special education and related services under the IDEA. *See* 20 U.S.C. §§ 1401(19), 1412–1414.

### A. Free Appropriate Public Education ("FAPE")

One of the statute's primary conditions for the receipt of federal funding is the provision of a "free appropriate public education" or "FAPE" to qualifying students. *See Endrew F. ex rel. Joseph F. v. Douglas Cnty. Sch. Dist. RE-1*, 580 U.S. 386, 390 (2017) (citing 20 U.S.C. § 1412(a)(1)). The IDEA does not precisely describe what a FAPE shall entail, but rather "contemplates that school districts will achieve [its] goals by designing and administering a program of individualized instruction for each special education student." *D.S. v. Bayonne Bd. of*

*Educ.*, 602 F.3d 553, 557 (3d Cir. 2010). This specially tailored program is set forth in an "individualized education plan," or "IEP," which delineates "the student's present abilities, goals for improvement of the student's abilities, services designed to meet those goals, and a timetable for reaching the goals by way of the services." *Holmes v. Millcreek Twp. Sch. Dist.*, 205 F.3d 583, 589 (3d Cir. 2000) (citing 20 U.S.C. § 1401(a)(20)).

### B. Independent Educational Evaluations ("IEEs")

Eligibility for special education and related services under the IDEA requires a child to first undergo an evaluation by a public agency, such as the Board here. *See* 20 U.S.C. §§ 1401(19)(A), 1414(a)(1)(A); *see also* N.J. ADMIN CODE §§ 6A:14-2.5 (discussing evaluation procedures and noting that district boards of education conduct evaluations), 6A:14-3.1(a)–(b) (stating that "child study team" members are responsible for the evaluation of students and must be employees of a district board of education). Once a child is deemed eligible and an IEP is formulated, school districts are thereafter required to review the child's IEP at least annually to determine "whether the annual goals for the child are being achieved" and to "revise[ ] the IEP as appropriate." 20 U.S.C. § 1414(d)(4)(i)–(ii).

If a parent disagrees with any evaluation or reevaluation administered by the school board, the IDEA grants her the "right to an independent educational evaluation," or "IEE." *See* 34 C.F.R. § 300.502(b)(1); *see also* N.J. ADMIN. CODE § 6A:14-2.5(c). Importantly, an IEE is to be delivered "at public expense," meaning the school board either "pays for the full cost of the evaluation or ensures that the evaluation is otherwise provided at no cost to the parent." 34 C.F.R. §§ 300.502(a)(3)(ii), (b)(1).

### C. Dispute Resolution Procedures

Where a dispute arises concerning a qualifying child's education and services, parents may pursue a number of dispute-resolution procedures, among which include the right to begin an "impartial due process hearing" in accordance with state law. *See* 20 U.S.C. § 1415(f)(1)(A). Similarly, if a school board denies a request for a publicly funded IEE, the board must request a due process hearing within twenty days. *See M.S. v. Hillsborough Twp. Pub. Sch. Dist.*, 793 F. App'x 91, 94 (3d Cir. 2019) (citing N.J. ADMIN. CODE. §§ 6A:14-2.5(c)(1)(ii) and 6A:14-2.7(b)). In New Jersey, both processes entail filing a complaint and request for a due process hearing with the New Jersey Department of Education. *See A.C. o/b/o Z.P. v. W. Windsor-Plainsboro Bd. of Educ.*, No. 21-13016, 2022 WL 17340687, at *2 (D.N.J. Nov. 30, 2022); *see also* N.J. ADMIN. CODE § 6A: 14-2.7(c). This process "encourages parents and the local school district to work together to formulate an individualized plan for a child's education, and allows the education agencies to apply their expertise and correct their own mistakes." *Woodruff v. Hamilton Twp. Pub. Sch.*, 305 F. App'x 833, 837 (3d Cir. 2009). However, if a resolution cannot be reached, the matter is transmitted to the New Jersey Office of Administrative Law (the "NJOAL") to be adjudicated by way of a "due process hearing." *See Est. of S.B. by & through Bacon v. Trenton Bd. of Educ.*, No. 17-07158, 2018 WL 3158820, at *2 (D.N.J. June 28, 2018); *see also* N.J. ADMIN. CODE § 6A:14–2.7.

Any party dissatisfied with the outcome of a due process hearing has the right to seek judicial review of an ALJ's decision "by filing an action in a competent state or federal court." *Y.B.*, 4 F.4th at 198 (3d Cir. 2021) (citing 20 U.S.C. § 1415(i)(2)(A)). However, bringing such an action requires the party to do so within "90 days from the date of the decision of the hearing officer." 20 U.S.C. § 1415(i)(2)(A). If neither party seeks judicial review within the ninety-day

4

limitations period, then the hearing officer's decision becomes final and binding. 20 U.S.C. § 1415(i)(1)(A).

### III. BACKGROUND

#### A. Procedural History[1]

Defendant is the mother of W.W., a sixteen-year-old student who formerly attended middle school under the Board's jurisdiction. (ECF No. 1-1 at 5.) On December 8, 2019, Defendant filed a petition for due process against the Board, in which she alleged, among other things, that the Board failed to offer W.W. an IEP that provided him with a FAPE and demanded compensatory education. (*Id.*)[2] Beyond the substantive challenges to W.W.'s education, Defendant also demanded an order compelling the Board to pay for W.W. to receive various IEEs in all areas of suspected disability, which would be performed by professionals at Defendant's selection. (*Id.* at 6.) However, on December 30, 2019, the Board agreed to cover the costs of W.W.'s IEEs, subject to the cap set by the Board's reasonable cost criteria of $1,200 per evaluation. (ECF No. 1-2 at 2.) Subsequently, Defendant withdrew all of her requests from her petition, except her demand for compensatory education for the alleged denial of a FAPE. (ECF No. 1-1 at 3.)

As the parties continued to litigate Defendant's petition before the ALJ, W.W. proceeded to be evaluated by eight, separate professionals in various areas, including speech, reading, and psychiatry. (ECF No. 1-2 at 3.) After the evaluations were completed, the invoices for five of the eight IEE evaluators fell within the District's cost criteria, and were accordingly paid in full. (ECF No. 1-2 at 3.) However, three invoices exceeded the District's cost criteria cap, and were thus

---

[1] In reciting the foregoing procedural history, the Court relies on Defendant's Answer and Counterclaims (ECF No. 6), the Final Decisions of the ALJ issued on September 29, 2020 (ECF Nos. 1-1, 1-2), and the Board's Complaint (ECF No. 1).

[2] The Education Petition was filed under OAL Docket Number EDS 00311-20.

partially paid in the amount of $1,200—the "maximum amount the District's cost criteria cap permitted." (*Id.*)[3] Consequently, Defendant filed a second due process petition on July 6, 2020, concerning the outstanding balances, which was subsequently consolidated with the ongoing proceeding initiated by her first petition. (*Id.* at 3.)

### A. The ALJ's Decisions

At the conclusion of the due process proceedings, the ALJ issued two, separately written decisions, both of which are dated September 29, 2022. The first was a forty-one-page decision addressing Defendant's substantive claims, as set out in her first petition (the "Education Decision"). The ALJ concluded that the Board had in fact provided W.W. with a FAPE, based on documentary evidence and expert testimony received over twelve days of hearings, and accordingly denied Defendant's demand for compensatory education.

The second was a four-page decision that addressed Defendant's Motion to Compel Payment (the "IEE Decision"). This Motion, which was previously filed on June 2, 2021, demanded an order compelling the Board to reimburse Defendant for the outstanding balances of the three disputed invoices, which she was allegedly required to cover. (*Id.*)[4] In opposition, the Board—in addition to challenging the reasonableness of these invoices—also challenged their propriety, arguing that they were not truly "independent" as anticipated by the IDEA. For example, the Board submitted email communications between Defendant and the evaluators obtained during discovery, which purportedly showed that she and her counsel had in fact been editing the IEEs.

---

[3] According to the ALJ, Defendant submitted invoices in the amounts of $2,500, $2,973.75, and $3,200. (ECF No. 1-1 at 4.)

[4] Concerning Defendant's demand for payment, the ALJ observed: "During the course of the hearing, it was revealed that these payments were paid by [Defendant's] attorney, Jamie Epstein, Esq.[,] with [Defendant] executing a promissory note to Epstein for the payments." (ECF No. 1-1 at 4.)

6

In addition, the Board also pointed to suspicious billing practices, as well as the fact that at least one of the evaluators was not even certified by the New Jersey Department of Education to provide such services.

Although the IEE Decision granted Defendant's Motion, it did not reach the merits of the Board's arguments or otherwise rely on any particular findings of fact. Rather, the ALJ held that the Board, as a matter of law, had in fact waived its right to challenge the outstanding IEE invoices. Specifically, the ALJ interpreted a New Jersey IDEA-implementing regulation, which states that an IEE "shall be provided at no cost to the parent, unless the district board of education initiates a due process hearing to show that its evaluation is appropriate." N.J. ADMIN. CODE § 6A:14-2.5(c). The ALJ reasoned that, because Defendant initiated the due process proceeding concerning non-payment, and because the Board had not initiated a proceeding of its own, it was thus barred from challenging the invoices for the same.

### B. The Instant Action

On December 1, 2022, the Board timely filed a Complaint in this Court seeking review of only the ALJ's IEE Decision. (ECF No. 1.) Specifically, the Board claims that the ALJ committed legal error by failing to adhere to controlling federal law holding that a school district need not initiate a due process hearing in order to preserve its IEE challenges.

Although Defendant was properly served with a copy of the Complaint, she did not file a response within the time prescribed by Federal Rule of Civil Procedure 4. Consequently, on February 8, 2023, the Board moved for the entry of default against her. However, Defendant ultimately filed an Answer and Counterclaims later this same day, and the Clerk of Court declined to enter a default against her. In response to the Board's Complaint, Defendant has asserted three

7

counterclaims, all of which challenge, not the IEE Decision, but rather the ALJ's Education Decision.[5]

In the instant Motion to Dismiss, the Board contends that Defendant's attempt to appeal the Education Decision is untimely because her counterclaims—which she filed in this Court 132 days after the ALJ issued the Education Decision—are barred by the IDEA's 90-day statute of limitations period for aggrieved parties to seek judicial review of a final administrative decision. *See* 20 U.S.C. § 1415(i)(2)(B). Defendant has filed an Opposition thereto, which was also untimely, despite a previously granted extension.

## IV.   STANDARD OF REVIEW

Courts evaluate a motion to dismiss a counterclaim under the same standard as a motion to dismiss a complaint. *See, e.g., Barefoot Architect, Inc. v. Bunge*, 632 F.3d 822, 826 (3d Cir. 2011). Pursuant to Federal Rule of Civil Procedure 12(b)(6), a district court is required to accept as true all factual allegations in the pleading and draw all reasonable inferences from those allegations in the light most favorable to the non-movant, *see Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 228 (3d Cir. 2008), but need not accept as true legal conclusions couched as factual allegations. *Papasan v. Allain*, 478 U.S. 265, 286 (1986). To survive a motion to dismiss, a pleading must therefore contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic v. Twombly*, 550 U.S. 544, 570 (2007)) (internal quotation marks omitted).

---

[5] Counts I through III of Defendant's Answer and Counterclaims, each of which seek review of the Education Decision, are respectively pled under the IDEA; Section 504 of the Rehabilitation Act of 1973 (the "RA"); and the Americans with Disabilities Act (the "ADA"). Count IV, however, seeks to enforce the IEE Decision. The Board has only moved to dismiss Counts I through III.

The Federal Rules of Civil Procedure require that affirmative defenses, like the statute of limitations, be asserted in a responsive pleading. *See Robinson v. Johnson*, 313 F.3d 128, 135 (3d Cir. 2002) ("The defenses listed in Rule 12(b) do not include limitations defenses."). In this circuit, however, litigants are permitted to raise limitations defenses by way of motion to dismiss, but only if "the bar is [ ] apparent on the face of the [pleading]." *Schmidt v. Skolas*, 770 F.3d 241, 249 (3d Cir. 2014) (quotation marks omitted). In deciding such a motion, courts may only consider the allegations contained in the pleading; exhibits attached thereto; matters of public record; and document that are integral to or explicitly relied upon in the pleading. *See id.*[6]

## V.   DISCUSSION

The question presented by the Board's Motion is whether Defendant's counterclaims are timely under the IDEA's ninety-day limitations period. As previously indicated, the IDEA affords any aggrieved party the right to seek judicial review "by filing an action in a competent state or federal court." *Y.B.*, 4 F.4th at 198 (3d Cir. 2021) (citing 20 U.S.C. § 1415(i)(2)(A)). The time to file such an action, however, is not unlimited. Indeed, the IDEA limits a party's right to "bring an action" to within "90 days from the date of the decision of the hearing officer." 20 U.S.C. § 1415(i)(2)(A). However, there is an exception to the IDEA's ninety-day time bar where a litigant seeks review of a final administrative decision by way of a compulsory counterclaim. *See Jonathan H. v. The Souderton Area Sch. Dist.*, 562 F.3d 527, 530 (3d Cir. 2009) (holding that a "compulsory counterclaim [ ] timely pleaded under Rule 13(a) of the Federal Rules of Civil Procedure" may be asserted beyond the ninety-day limitations period).

---

[6] Neither party disputes the Court's ability to consider the Education Decision or the IEE Decision, despite the fact that neither are attached to Defendant's Answer and Counterclaims.

9

Here, it is undisputed that Defendant filed her counterclaims beyond the ninety-day limitations period. Thus, the timeliness of Defendant's counterclaims pivots on whether they are "compulsory" or "permissive" under Rule 13(a). *See id.*; *see also Charlotte-Mecklenburg Cnty. Bd. of Educ. v. Brady*, 66 F.4th 205, 214 (4th Cir. 2023) (adopting *Jonathan H.*) ("[A]s long as the counterclaim was compulsory, and timely pleaded in accordance with Federal Rule of Civil Procedure 13, the IDEA's limitations on plaintiffs' 'right to a civil action' does not bar the filing of defendants' counterclaim."); *N. Cypress Med. Ctr. Operating Co. v. Cigna Healthcare*, 781 F.3d 182, 206–07 (5th Cir. 2015) (reaffirming adoption of *Jonathan H.*) (stating that "asserting a compulsory counterclaim is not 'bringing an action'" under the IDEA).[7]

### A. Fed. R. Civ. P. 13

Federal Rule of Civil Procedure 13(a)(1) defines a "compulsory" counterclaim as one which "arises out of the transaction or occurrence that is the subject matter of the opposing party's claim." Fed. R. Civ. P. 13(a)(1)(A). In contrast, a "permissive" counterclaim is simply "any claim that is not compulsory." Fed. R. Civ. P. 13(b).

To determine whether a counterclaim is compulsory, federal courts must assess "whether the counterclaim bears a logical relationship to an opposing party's claim." *Transamerica Occidental Life Ins. Co. v. Aviation Off. of Am., Inc.*, 292 F.3d 384, 389–90 (3d Cir. 2002) (internal quotation marks omitted). Generally speaking, a "logical relationship" exists between a plaintiff's claims and a defendant's counterclaims where "separate trials on each . . . would 'involve a substantial duplication of effort and time by the parties and the courts.'" *Id.* (quoting *Xerox Corp. v. SCM Corp.*, 576 F.2d 1057, 1059 (3d Cir.1978)). "Such a duplication is likely to occur when

---

[7] The parties appear to agree the IDEA's ninety-day limitations period applies with equal force to Counts II and III of Defendant's Answer and Counterclaims, which are respectively pled under the RA and the ADA. *See also Blunt v. Lower Merion Sch. Dist.*, 559 F. Supp. 2d 548, 564 (E.D. Pa. 2008) (finding ninety-day statutory period applicable to IDEA-related claims under the ADA and the RA), aff'd on other grounds, 767 F.3d 247 (3d Cir. 2014).

10

claims involve the same factual issues, the same factual and legal issues, or are offshoots of the same basic controversy between the parties." *Id.* (citing *Great Lakes Corp. v. Herbert Cooper Co.*, 286 F.2d 631, 634 (3d Cir. 1961)).

### B. Defendant's Counterclaims

Having considered the nature of the Board's claims and Defendant's counterclaims, the Court is not convinced that they "involve the same factual issues, the same factual and legal issues, or are offshoots of the same basic controversy between the parties." *Transamerica*, 292 F.3d at 390. As previously indicated, the Education Decision addressed Defendant's claim that the Board had failed to provide W.W. with a FAPE. When confronted with FAPE-based claims such as this one, administrative hearing officers must determine whether a child's IEP was "calculated to enable a child to make progress appropriate in light of the child's circumstances." *Endrew F. ex rel. Joseph F. v. Douglas Cnty. Sch. Dist. RE-1*, 580 U.S. 386, 399 (2017). This entails a fact-intensive inquiry that is informed, not only by the expertise of school officials and other education professionals, but also the input of the child's parents and any experts they wish to proffer. *See id.* Perhaps most critically, it requires administrative hearing officers to receive, review, and weigh "testimony and documentary evidence concerning the child's needs and a school board's plans for meeting them." *M.R. v. Ridley Sch. Dist.*, 744 F.3d 112, 120 (3d Cir. 2014).

The Education Decision here was no different. In finding that the Board had in fact provided W.W. with a FAPE, the ALJ had received, reviewed, and relied on 94 evidentiary exhibits, which included nearly seven years' worth of education records and evaluation history. In addition, the ALJ also heard and weighed testimony from ten witnesses, including eight education experts, over the course of twelve hearings. But despite the breadth of the evidence and testimony

11

underpinning the Education Decision, all of it was extraneous to the narrow question of law resolved by the IEE Decision.

While the Education Decision "focused on the substance of an appropriate education" for W.W., the IEE Decision concerned a mere "payment dispute" that had nothing to do "with [the Board's] placement decisions, the services it offered [W.W.], [or] its response to [his] disability." *M.R.*, 744 F.3d at 121 (finding that a counterclaim for expense reimbursement was permissive because there was "no meaningful overlap between the facts and law underlying" a denial-of-FAPE claim) (internal quotation marks omitted). Indeed, far from risking "substantial duplication" of time and effort, Defendant's counterclaims would significantly expand the scope of this Court's review in a manner that hardly overlaps with the single question of financial responsibility of which the Board seeks review. *Transamerica*, 292 F.3d at 390.[8]

In her Opposition to the Board's Motion, Defendant submits that her counterclaims are compulsory, rather than permissive. But beyond asserting in a conclusory fashion that her counterclaims bear a "logical relationship" to the Board's claims, Def.'s Opp. Br. at 6 (quoting *Xerox Corp.*), she does not articulate how they involve the same facts or issues raised by the Board's Complaint or the IEE Decision it appeals.[9] And although both decisions surely concern the rights of W.W. and Defendant under the IDEA, "the similarity ends there." *M.R.*, 744 F.3d at 120; *see also Council Rock Sch. Dist. v. Bolick*, 462 F. App'x 212, 214 (3d Cir. 2012) (observing that a claim for IEE reimbursement is "entirely independent" from a challenge to an IDEA

---

[8] Indeed, in the event that the Board is ultimately successful, the Court would most likely be constrained to remand the IEE Decision to the ALJ, given the absence of any particularized factfinding.

[9] The only meaningful argument Defendant offers is that both decisions bear the "same caption" and the "same case numbers." Def.'s Opp. Br. at 2.

eligibility determination for purposes of claim preclusion); *Transamerica* 292 F.3d at 391 (recognizing the "close connection between Rule 13(a) and the doctrine of claim preclusion").

For all of these reasons, the Court finds that Defendant's counterclaims are permissive, rather than compulsory, and are thus time-barred by the IDEA's ninety-day limitations period. *See Jonathan H.*, 562 F.3d at 530; *Brady*, 66 F.4th 205 at 214.[10]

## VI. CONCLUSION

For all of the reasons articulated above, the Court grants the Board's Motion and dismisses Counts I through III of Defendant's Answer and Counterclaims with prejudice.

Date:   September 30, 2023

*/s/ Karen M. Williams*
KAREN M. WILLIAMS
U.S. DISTRICT COURT JUDGE

---

[10] The Court is mindful that Defendant has also sought to appeal certain orders pertaining to her counsel's request for the ALJ's recusal based on an alleged "bias" against him. To the extent Defendant also premises her counterclaims on these orders, the Board submits that they are likewise permissive and should thus be dismissed as time-barred. Nowhere in her Opposition does Defendant reference her appeal of these recusal orders, much less address the arguments of the Board for their dismissal. The closest acknowledgement Defendant offers is a vague assertion, devoid of citations to any legal authority, that "as a matter of law, all separate interlocutory orders are incorporated into the final order." Def.'s Opp. Br. at 3. What precisely Defendant intends to argue, the Court cannot say. Regardless, the Court declines to decipher or otherwise make Defendant's arguments for her, and deems her claims abandoned. *See Graceway Pharms., LLC v. Perrigo Co.*, 722 F. Supp. 2d 566, 571 (D.N.J. 2010) ("Arguments absent substantial development are waived."); *Reynolds v. Wagner*, 128 F.3d 166, 178 (3d Cir. 1997) (stating that arguments "consisting of no more than a conclusory assertion" lacking supporting citations "will be deemed waived").