IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

| | |
|---|---|
| MANTUA TOWNSHIP BOARD OF EDUCATION, <br><br> Plaintiff, <br><br> v. <br><br> E.K., on behalf of W.W., <br><br> Defendants. | HONORABLE KAREN M. WILLIAMS <br><br> Civil Action <br> No. 1:22-cv-07496-KMW-MJS <br><br> **OPINION** |

**William C. Morlok, Esq.**
GORMAN, D'ANELLA, AND MORLOK
1601 Atlantic Avenue, Suite 700
Atlantic City, N.J. 08401

*Counsel for Plaintiff*

**Jamie M. Epstein, Esq.**
17 Fleetwood Drive
Hamilton, NJ 08690

*Counsel for Defendant*

**WILLIAMS, District Judge:**

## I. INTRODUCTION

The Mantua Township Board of Education (the "Board" or "Plaintiff") brings this action under the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. §§ 1400 *et seq.*, seeking review of a September 29, 2022 decision of New Jersey Administrative Law Judge Carl V. Buck (the "ALJ"). In that decision, the ALJ granted the motion of defendant E.K. ("Defendant") to compel the Board to fully pay for the costs of three independent educational evaluations she had obtained on behalf of her son, W.W.—a minor student formerly enrolled in the Mantua Township School District. Although the Board contested its obligation to cover the invoices on several grounds, the ALJ did not reach the merits of those arguments. Instead, the ALJ concluded that the

Board had waived its right to challenge the invoices based on a New Jersey regulation implementing the IDEA.

The Board now moves for judgment on the administrative record, contending that the ALJ misinterpreted applicable law. Defendant has opposed the Board's motion. For the reasons set forth below, the Board's motion is granted.

## II. LEGAL BACKGROUND

The IDEA ensures that children with disabilities enjoy free, appropriately tailored public schooling that emphasizes special education and related services. *See M.S. v. Hillsborough Twp. Pub. Sch. Dist.*, 793 F. App'x 91, 92–93 (3d Cir. 2019). In exchange for federal funding, states pledge to implement a number of substantive and procedural conditions in providing educational services to qualifying disabled students. *See T.R. v. Sch. Dist. of Philadelphia*, 4 F.4th 179, 182–83 (3d Cir. 2021). State recipients then apportion federal funds to local educational agencies, like the Board here, who are in turn responsible for providing educational services under the IDEA. *See* 20 U.S.C. §§ 1401(19), 1412–1414.

Courts have frequently described the IDEA as a model of "cooperative federalism." *See, e.g., Schaffer ex rel. Schaffer v. Weast*, 546 U.S. 49, 52 (2005). While the statute "leaves to the States the primary responsibility for developing and executing educational programs for handicapped children," it also "imposes significant requirements to be followed in the discharge of that responsibility." *Id.* (quoting *Board of Ed. of Hendrick Hudson Central School Dist., Westchester Cty. v. Rowley*, 458 U.S. 176, 183 (1982)). The precise methods for implementing those requirements are determined by a comprehensive scheme of federal and state regulations implementing the IDEA. *See D.S. v. Bayonne Bd. of Educ.*, 602 F.3d 553, 557 n.1 (3d Cir. 2010).

A student's eligibility for special education under the IDEA begins with an evaluation conducted by a local educational agency. *See* 20 U.S.C. §§ 1401(19)(A), 1414(a)(1)(A). In conducting an evaluation, the agency must assess the student "in all areas related to the suspected disability, including, if appropriate, health, vision, hearing, social and emotional status, general intelligence, academic performance, communicative status, and motor abilities." 34 C.F.R. § 300.304(c)(4). If a student is found to be eligible, agencies are thereafter required to reevaluate the student at least once every three years, but not more frequently than once a year (unless the parent and agency agree otherwise). *See* 34 C.F.R. § 300.303(b). In New Jersey, this responsibility is assigned to the "child study team," whose members are specialists employed by local boards of education. *See* N.J. ADMIN. CODE §§ 6A:14-2.5, 6A:14-3.1(a)–(b).

Parental participation is the cornerstone of the IDEA. To guarantee parents an opportunity for meaningful input on all decisions affecting their child's education, the IDEA prescribes various "procedural safeguards" to be implemented by federal and state regulations. *See* 20 U.S.C. § 1415. One of those safeguards is the parent's ability to obtain an "independent educational evaluation" ("IEE")—an assessment conducted by a qualified professional outside of the school system. *See* 34 C.F.R. § 300.502(a)(3)(i); N.J. ADMIN. CODE § 6A:14-2.5(c). Parents may obtain an IEE at their own expense, but in some instances may be entitled to one "at public expense." 34 C.F.R. §§ 300.502(a)(3)(ii), (b)(1); *see also* N.J. ADMIN. CODE § 6A:14-2.5(c).

## III. FACTUAL BACKGROUND

Defendant's son, W.W., is a student formerly enrolled in the Mantua Township School District. W.W. is autistic and has received special education and related services under the IDEA since November 2014.

In 2019, a dispute arose between Defendant and the Board after a series of disciplinary incidents in which W.W. allegedly made homicidal threats against peers. (ECF No. 1-1 at 26–28.) Following a three-day suspension in November of that year, the Board offered additional support and services. (*Id.* at 10–11.) Defendant, however, rejected those offers and further revoked her consent to counseling services W.W. had long received. (*Id.* at 12, 32.) On December 8, 2019, Defendant filed a due process petition, in which she demanded, among other things, a manifestation determination, as well as an unspecified number of publicly funded IEEs "in all areas of suspected disability." (ECF No. 31-4 at 56.)

Two days later, Defendant's counsel sent the Board a letter disputing its "most recent evaluation" of W.W. as "improper," and requesting seven IEEs, at public expense, to be conducted by evaluators of Defendant's choosing. (ECF No. 31-1 at 960.) The letter does not indicate which evaluation Defendant specifically disputed. As far as the Court can discern, the Board had previously conducted no fewer than twelve evaluations, the most recent being a psychological evaluation in October 2017—over two years earlier.[1] (ECF No. 1-1 at 39–40.) Nevertheless, the Board consented to Defendant's request for seven IEEs, subject to its reasonable-cost caps for outside providers. (ECF No. 31-9 at 794–804.) Defendant later withdrew all claims from the First Petition except her request for compensatory education. (ECF No. 1-1 at 3.)

Defendant proceeded to have W.W. evaluated throughout 2020, and the invoices for the IEEs were sent directly to the Board for payment. All invoices were paid in full, except for three: a "Speech and Language" IEE ($2,500), a "Reading" IEE ($3,200), and a "Functional Behavior

---

[1] *But see* 34 C.F.R. § 300.502 ("A parent is entitled to only one independent educational evaluation at public expense each time the public agency conducts an evaluation with which the parent disagrees."); *see also* N.J. ADMIN. CODE § 6A:14-2.5(c) ("*Upon completion* of an initial evaluation or reevaluation, a parent may request an independent evaluation if there is disagreement with the initial evaluation or a reevaluation provided by a district board of education.") (emphasis added).

4

Assessment" ("FBA") ($2,973.75). (ECF No. 1-1 at 4.) For each of these three evaluations, the Board remitted partial payment to the evaluators in the amount of $1,200, stating that it was the maximum reimbursement permitted for these types of evaluations. (ECF No. 1-2 at 2.) According to the Board's special education director, these were the highest invoices she had ever seen for these types of evaluations. (ECF No. 1-1 at 14.)

It is undisputed that neither Defendant nor her counsel contacted the Board before obtaining these IEEs or sought exception to the cost caps. Nevertheless, on July 6, 2020, Defendant filed a second due process petition alleging that she had personally paid the outstanding balances and seeking full reimbursement. (ECF No. 1-1 at 6.) This matter was subsequently consolidated with Defendant's first petition pending in the New Jersey Office of Administrative Law. (ECF No. 1-1 at 3.)

In the ensuing proceedings, the parties' dispute over the IEEs expanded. Throughout discovery, the Board expressed concern, both in filings and on the record, that the contents of the IEEs had been improperly edited or influenced by Defendant's counsel. The Board repeatedly sought production of draft reports and related communications reflecting edits, comments, or modifications to the IEEs. Despite those requests—and numerous orders from the ALJ—Defendant's counsel refused to comply, and it appears he still has not. (ECF No. 1-3.) Although the ALJ did not resolve the issue of counsel's influence, he noted that during subsequent hearings, "it was revealed that [] payments" for the IEEs had been made "by [Defendant's] attorney, Jamie Epstein, Esq. with [Defendant] executing a promissory note to Epstein for the payments." (ECF No. 1-1 at 3, 28.)

After multiple hearings, Defendant moved for an order compelling the Board to reimburse her for the disputed invoices. (ECF No. 1-1 at 3.) The Board opposed, arguing not only that

5

Defendant had unilaterally exceeded its cost caps, but that the IEEs themselves were improper and not truly "independent." (ECF No. 1-2.) In addition to the concerns about counsel's involvement, the Board identified suspicious billing irregularities and noted that at least one evaluator lacked a required state license. (*Id.*)

On September 29, 2022, the ALJ issued a four-page decision granting Defendant's motion and ordering the Board to pay the remaining balances on the disputed IEEs. (ECF No. 1-2.) The ALJ did not address the merits of the Board's objections. Nor did he address the interest of Defendant's counsel in this dispute. Instead, relying exclusively on a provision of the New Jersey Administrative Code implementing the IDEA, the ALJ held that the Board had forfeited its right to raise any objection because it had not initiated a due process hearing of its own within twenty days of receiving Defendant's initial IEE request in December 2019. The Board argued that this twenty-day requirement, set forth in N.J. ADMIN. CODE § 6A:14-2.5(c)(1)(ii), applies only when a school board rejects a parent's initial IEE request—not when disputes later arise over a parent's noncompliance with applicable criteria. The ALJ rejected that position, reasoning:

> [T]he code clearly states that such evaluation shall be at no cost, unless they initiate a process showing their evaluation was appropriate. The Board did not provide an appropriate filing to the court or inquiry to petitioner (within twenty days) which clearly articulated that their evaluations were appropriate. Rather, the Board agreed to pay for petitioner's evaluations, some of which had not been performed by the Board and is choosing to contest the costs after the fact. Thus, the Board owes payment for the evaluations for which payment is still due.

(ECF No. 1-2 at 4–5.)

The Board timely filed this action seeking review of the ALJ's decision. (ECF No. 1.) Presently before the Court is the Board's motion for summary judgment, submitted pursuant to Federal Rule of Civil Procedure 56, which Defendant has opposed. The motion has been fully briefed and is ripe for disposition.

## IV. STANDARD OF REVIEW

The standard of review under which the Court considers an administrative decision under the IDEA "differs from that governing the typical review of summary judgment." *M.A. ex rel. G.A. v. Voorhees Tp. Bd. of Educ.*, 202 F. Supp. 2d 345, 359 (D.N.J. 2002), *aff'd*, 65 Fed. App'x. 404 (3d Cir. 2003) (internal citations and quotations omitted). In reviewing an administrative decision, a district court is tasked with applying a "modified *de novo* review," which requires it to give "due weight" and "deference" to the findings in the administrative proceedings. *E.I.H. v. Fair Lawn Bd. of Educ.*, 747 F. App'x 68, 71 (3d Cir. 2018). "Factual findings from the administrative proceedings are to be considered prima facie correct, and if the reviewing court does not adhere to those findings, it is obliged to explain why." *D.S. v. Bayonne Bd. of Educ.*, 602 F.3d 553, 564 (3d Cir. 2010) (internal quotation marks omitted). "Nonetheless, the district court's review over questions of law and the ALJ's application of legal precepts is plenary." *M.A. v. Wall Twp. Bd. of Educ.*, No. 20-05218, 2021 WL 5448911, at *4 (D.N.J. Nov. 22, 2021) (citing *Carlisle Area Sch. v. Scott P. By & Through Bess P.*, 62 F.3d 520, 528 n.3 (3d Cir. 1995)).

## V. DISCUSSION

This case requires the Court to decide whether the ALJ correctly ordered the Board to pay in full for three disputed IEEs. At the threshold lies a question of law—when a school board initially agrees to fund an IEE, does it forfeit its right to later contest payment based on the parent's noncompliance with agency criteria? It does not.

The Court begins with the applicable regulatory framework. As previously indicated, federal and state regulations both entitle parents to seek an IEE to assess their children's needs, abilities, or eligibility for special education. *See* 34 C.F.R. § 300.502(a)(3)(i); N.J. ADMIN. CODE § 6A:14-2.5(c). Any time an IEE is sought, a school board must give the parent "information about

7

where an [IEE] may be obtained," as well as the "agency criteria applicable for [IEEs]." 34 C.F.R. § 300.502(a)(2); *see also* N.J. ADMIN. CODE § 6A:14-2.5(c)(1)(i). While parents are always free to obtain an IEE at their own expense, they sometimes can obtain one "at public expense," meaning the school board either "pays for the full cost of the evaluation or ensures that the evaluation is otherwise provided at no cost to the parent." 34 C.F.R. §§ 300.502(a)(3)(ii), (b)(1); *see also* N.J. ADMIN. CODE § 6A:14-2.5(c). The right to a publicly funded IEE is triggered when (1) the school board conducts an evaluation or reevaluation of a child, and (2) the parent subsequently disagrees with that evaluation. *See M.S.*, 793 F. App'x at 93 (citing 34 C.F.R. § 300.502(b)(1) and N.J. ADMIN. CODE § 6A:14-2.5(c)).

When a parent properly submits a request for a publicly funded IEE, federal regulation requires the school board to either:

> (i) File a due process complaint to request a hearing to show that its evaluation is appropriate; or
>
> (ii) Ensure that an independent educational evaluation is provided at public expense, unless the agency demonstrates in a hearing pursuant to §§ 300.507 through 300.513 that the evaluation obtained by the parent did not meet agency criteria.

34 C.F.R. § 300.502(b)(2)(i)–(ii). The text and structure of this regulation reflect a clear situational distinction. Paragraph (i) governs refusals: when a school board denies a parent's request, it must promptly request a hearing and defend its own evaluation. Paragraph (ii) governs approvals: when a school board agrees to fund an IEE, but later seeks to contest payment if the parent fails to comply with agency criteria. Other courts in this District have interpreted and applied § 300.502(b)(2) in just this way. *See C.P. o/b/o F.P. v. Clifton Bd. of Educ.*, No. 19-8469, 2020 WL 4530031, at *5–*9 (D.N.J. Aug. 6, 2020); *M.D. v. Vineland City Bd. of Educ.*, No. 19-12154, 2024 WL 195371, at *12 (D.N.J. Jan. 17, 2024).

The "unless" clause in paragraph (ii) is critical: it makes clear that a school board's initial agreement does not create an unconditional obligation to pay. This plain reading is confirmed by other provisions, which explicitly condition a parent's rights to public funds (and correspondingly the school board's obligation to pay) on the IEE adhering to the same "agency criteria" under which the school board had previously conducted its disputed evaluations. *See* 34 C.F.R. § 300.502(e)(1) ("If an [IEE] is at public expense, the criteria under which the [IEE] is obtained . . . must be the same as the criteria that the public agency uses when it initiates an evaluation[.]"); *see also* N.J. ADMIN. CODE § 6A:14-2.5(c)(2) (requiring adherence to prescribed criteria for "[a]ny independent evaluation obtained at the district board of education's expense"). These criteria included, among other things, "the qualifications of the examiner," 34 C.F.R. § 300.502(e)(1), as well as the "reasonable cost containment criteria" the Board had previously established for evaluations from independent examiners, 71 Fed. Reg. 46689–90; *see also* N.J. ADMIN. CODE §§ 6A:14-2.5(c)(2), 6A:14-3.4.

The facts of this case illustrate how this regulatory distinction operates in practice. When the Board first received Defendant's IEE request in December 2019, it had two options. First, the Board could have refused Defendant's request, in which case it would have been required to "[f]ile a due process complaint to request a hearing to show that its evaluation is appropriate." 34 C.F.R. § 300.502(b)(2)(i); *see also* N.J. ADMIN. CODE § 6A:14-2.7 (requiring school boards to "request a due process hearing when [it] . . . denies a written parental request for an [IEE] in accordance with [§] 6A:14–2.5(c)"). By New Jersey regulation—which is the only authority the ALJ considered— the Board would have needed to file that complaint within "20 calendar days [of] receipt" of Defendant's request. N.J. ADMIN. CODE § 6A:14-2.5(c)(1)(ii).

9

Of course, the Board did not refuse Defendant's request—it chose the second route anticipated by the regulations and agreed to fund the requested IEEs. Once the Board agreed, paragraph (ii) of § 300.502(b)(2) controlled. But while the Board's obligation to "ensure" that an IEE was provided at public expense became operative, it remained contingent on Defendant's future compliance with agency criteria. *See* 34 C.F.R. §§ 300.502(b)(2)(ii), (e)(1); *see also* N.J. ADMIN. CODE § 6A:14-2.5(c)(2). Unlike paragraph (i), paragraph (ii) did not require the Board to "[f]ile a due process complaint" or "request a hearing" in order to enforce agency criteria; rather, it required the Board to simply "demonstrate[] in a hearing . . . that the [IEEs] obtained by the [Defendant] did not meet agency criteria." Nothing in § 300.502, or in the corresponding New Jersey regulations, required the Board to demonstrate Defendant's alleged noncompliance in a hearing it itself initiated.

Nor did these regulations require the Board to request such a hearing within twenty days of first receiving Defendant's request. The plain language underpinning New Jersey's twenty-day rule confirms that it only applies to the scenario anticipated by paragraph (i)—when a school board denies a parent's IEE request at the outset, thus requiring it to promptly defend its own evaluation. *Compare* 34 C.F.R. § 300.502(b)(2)(i), *with* N.J. ADMIN. CODE §§ 6A:14-2.7 ("The district board of education shall request a due process hearing when the district board of education denies a written parental request for an independent evaluation in accordance with [§] 6A:14–2.5(c)."), *and* N.J. ADMIN. CODE § 6A:14–2.5(c) (requiring school boards to "request the due process hearing" no later than "20 calendar days after receipt of the parental request for the [IEE]"). Applying the twenty-day rule to paragraph (ii) would not only erase the distinction built into § 300.502, but it would also make little sense—at the time the Board agreed, there could not have been any evaluators, evaluations, invoices, or any other noncompliance with agency criteria.

By applying New Jersey's twenty-day rule to this case, the ALJ conflated two distinct regulatory pathways and effectively treated the Board's initial agreement as an unconditional commitment to pay. The Board's acquiescence, however, was not a "blank check" for Defendant "to spend *whatever* amount she wished on *any* [evaluation]" that she "unilaterally deem[ed] to constitute an IEE," and on the public's dime no less. *C.P.*, 2020 WL 4530031, at *8 (emphasis in original). By declining to challenge Defendant's request at the outset, the Board conceded only her *eligibility* to have the requested IEEs publicly funded. It did not, and could not, "waiv[e] in advance any defect that might occur in the future." *Id.* To hold otherwise would strip school boards of the ability to guard against unreasonable expenditures and abuses, and undermine their duty to protect the limited funds Congress intended to serve *all* children with disabilities.

The Board has retained the right to contest Defendant's claim for reimbursement, and it is entitled to have its objections heard and resolved. Because the ALJ did not reach the merits of those objections, remand is appropriate.[2]

## VI. CONCLUSION

For all of the reasons set forth above, the Court **GRANTS** the Board's motion, **REVERSES** the ALJ's decision, and **REMANDS** this matter to the New Jersey Office of Administrative Law for further proceedings.

---

[2] The Court acknowledges the Board's request that it reach the merits of its objections and effectively rule on Defendant's motion to compel reimbursement. But significant factual and legal issues remain undeveloped by both the parties and the ALJ. The parties cite only sparingly to an administrative record that is as voluminous as it is disorganized, while overlooking critical factual details and assuming away important legal questions. On this record, the Court cannot determine with confidence such basic matters as the limits of the Board's cost-containment criteria, the specific licensure requirements allegedly unmet by one evaluator, or even the number of evaluations Defendant was entitled to obtain at the outset. In addition, the ALJ does not appear to have addressed the serious discovery and ethical concerns regarding Defendant's counsel, which may bear directly on the relief Defendant requests. In short, Defendant's motion cannot, and should not, be resolved by this Court in the first instance.

Dated: September 25, 2025

                                             KAREN M. WILLIAMS
                                             U.S. DISTRICT COURT JUDGE